# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Jun 25, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Records and information associated with the cellular telephone assigned call number 414-215-8463, that is stored at the premises controlled by Verizon, a cellular service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey, 07921. | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.  25   MJ   123 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A-2.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2119(a); | Carjacking; |
| 18 U.S.C. 924(c) | Use and brandish a firearm during a crime of violence. |

The application is based on these facts:
Please see affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**HEATHER WRIGHT** Digitally signed by HEATHER WRIGHT
Date: 2025.06.24 10:56:58 -05'00'

*Applicant's signature*

Heather N. Wright, Special Agent-FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone (specify reliable electronic means).

Date: 06/25/2025

*[signature: William E. Duffin]*
*Judge's signature*

City and state: Milwaukee, WI      Honrable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF

# AN APPLICATION FOR A SEACH WARRANT

I, Heather N. Wright, being first duly sworn on oath, on information and belief state:

**I. INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE:**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone's assigned call number:

    a. **(414) 213-2321** ("**Target Cell Phone 1**"), that is stored at the premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054.

    b. **(414) 215-8463** ("**Target Cell Phone 2**"), that is stored at the premises controlled by Verizon, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey, 07921.

2. T-Mobile and Verizon will be referred to as the "Service Providers" and "**Target Cell Phone 1**" and "**Target Cell Phone 2**" will collectively be referred to as the "**Target Cell Phones**". The information to be searched is described in the following paragraphs and in Attachment A-1 and A-2. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Service Provider to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since July of 2010. Since August of 2020, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with

investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, and other violent crime matters, defined under Title 18 of the United States Code. I have participated in the investigation of numerous violent crimes, including armed bank robberies, armed motor vehicle robberies, and armed commercial robbery investigations in violation of Title 18, United States Code, Sections 924(c), 1951, 1956, 1957, 2113, and 2, and other related offenses. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, cellular telephone extractions, interviews, DNA collection, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

4. Based upon my training and experience, I know that criminal investigations have been aided by subpoenas, warrants, and court orders related to electronic communication records by providing critical investigative leads and corroborative evidence.

5. To this end, based upon my training and experience, I know that individuals involved in violent crimes use cellular telephones to maintain contact with co-conspirators aurally or via electronic message in "text" format. I also know that it is common for suspects who commit violent crimes to take, or cause to be taken, photographs and other visual depictions of themselves, their associates, and the illegal proceeds and firearms that they control or possess.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other Agents, law enforcement personnel, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that MAURICE O. SINGLETON (DOB: XX/XX/1988) and KENKADE G. DUPREE (DOB: XX/XX/1994) committed an armed robbery/carjacking in Milwaukee, Wisconsin, on June 6, 2025, in violation of Title 18, United States Code, Sections 2119 (Carjacking) and 924(c) (use and brandishing of a firearm during a crime of violence). I further submit that there is probable cause to believe that evidence of SINGLETON's and DUPREE's involvement in the carjacking will be recovered in the records that are sought herein.

## II.  PROBABLE CAUSE

8. I am investigating an armed robbery/ carjacking in Milwaukee, Wisconsin, that occurred on June 6, 2025.

9. On June 6, 2025, at approximately 12:00 a.m. CST, an armed robbery/carjacking occurred near 7000 W. Appleton Avenue, Milwaukee, Wisconsin. The victim, hereinafter B.M., stated that as he was heading to his residence, B.M. stopped at the Educator's Credit Union, just prior to midnight, to obtain cash to pay his rent. B.M. stated that approximately one minute after pulling into the eastern most ATM drive-thru on the east side of W. Appleton Avenue, another vehicle pulled up behind his. B.M. stated that his window was down, he had just gotten out his wallet and was just about to put his card into the ATM, when he turned and observed Suspect 1 standing at his driver door, pointing a "smoke gray", possibly 9MM, semiautomatic handgun at his face. B.M. described Suspect 1 as a black, male, approximately 20-23 years old, approximately 5'6"-5'7", caramel complexion, wearing a blue/green/gold ski mask with possibly a dollar sign design, a black hoodie with the hood down, dark blue jeans, and unknown shoes. B.M. stated that Suspect 1 stated "Where's the money at? Gimme the money or I'm gonna shoot you."

3

10. B.M. stated that he told the suspect that he didn't have any money. B.M stated that the Suspect 1 then told B.M. to get out of the vehicle and ordered B.M. to the ground. B.M. stated that he complied and laid down on the ground next to the ATM. B.M. stated that he heard Suspect 1 tell Suspect 2 to take B.M.'s vehicle (a white 2020 Volkswagen Atlas SUV). B.M. stated that he believed that both Suspect 1 and Suspect 2 entered B.M.'s vehicle and drove westbound on W. Appleton Avenue, followed by a third Suspect, driving the suspect's vehicle (a dark gray, possibly a 2010 Jeep Compass SUV with tinted windows). B.M. stated that after the vehicle's fled, he got up and ran away. B.M. stated that his keys (house, vehicle, and work) had been in the center console of the vehicle when the vehicle was taken. B.M. stated that B.M.'s cellphone (an Apple iPhone 12) and a blue/white Michael Kors wallet, containing his WI ID, Navy Federal Visa card, Navy Federal Debit Card, DAV Debit card, CashApp card, Health Insurance card, and $260 in cash, were also all taken when his vehicle was taken by the suspects.

11. On June 6, 2025, surveillance footage from the Educator's Credit Union was obtained and reviewed by Milwaukee Police Detective Mark Sheremeta. Upon review, on June 5, 2025, at 11:46 p.m., the victim arrived at the easternmost ATM, in his white Volkswagen Atlas SUV. The victim stayed there for approximately 13 minutes and appeared to have fallen asleep during this time. At 11:56 p.m., the suspect vehicle, a dark gray Chevy Equinox SUV with a dark tint, appeared, drove around the passenger side of the victim vehicle, and then exited the ATM drive thru. At approximately 11:59 p.m., the suspect vehicle re-entered the ATM drive-thru behind the victim vehicle and Suspect 1 approached the victim's driver door with a gun in his right hand, while Suspect 2 approached the victim's front passenger door. Suspect 1 attempted to open the driver door as Suspect 2 opens the front passenger door. The victim then opens and closes the driver side door. Suspect 1 runs back toward the suspect vehicle, while Suspect 2 remained at the

passenger side front door of the victim vehicle. Suspect 1 then reapproaches the victim's driver's door, opens it, and physically removes the victim at gunpoint. The victim runs around with his hands up behind the ATM, over the median, and the lays down in the drive-thru behind the ATM to the west, followed closely by Suspect 1. Suspect 2 then approaches the victim and goes through the victim's pockets. The victim points towards his vehicle as Suspect 2 continues to point his gun at the victim. Suspect 1 moves toward the suspect vehicle and Suspect 2 then moves towards the victim's vehicle.

12. At 12:00 a.m., Suspect 2 turns away from the victim and enters the victim vehicle. The victim then gets up and runs west across the grass towards the street. Suspect 2 gets into the victim's driver's seat and drives the victim vehicle westbound on W. Appleton Avenue followed by Suspect 2 driving the suspect vehicle. The two vehicles then switch positions with the suspect vehicle in front of the victim vehicle.

13. Within the video, the suspect's descriptions were the following: Suspect 1 was a black, male, approximately 20 years old, approximately 5'6"-5'7", thin, caramel complexion with face exposed, a goatee, wearing sunglasses, a solid black hoodie with the hood up, light colored (almost white) jeans with designed rips, keys with a red object attached hanging from belt, white athletic shoes, armed with a dark gray or black semiautomatic handgun. Suspect 2 was a black, unknown gender person, heavy build, shorter than Suspect 1, wearing an olive ski mask with possibly printed design, gold-rimmed sunglasses, a gold chain with a large cross pendant, sagging olive green colored shorts with a black, upside down "V" on the left leg with black underwear underneath, matching olive green t-shirt with a black and white "V" design on the chest, darker olive shoes with black soles, armed with a silver semi-automatic handgun. The suspect vehicle

was an approximately 2014 dark gray Chevrolet Equinox with dark tint with no front plate and a rear plate ASB-7154.

14. A search of FLOCK cameras revealed that a black Chevrolet Equinox with a white stain, as if a sticker was removed on the lower left corner of the rear window, and a Lammins with a cursive L sticker on the lower left corner of the rear trunk, bearing WI plate number ASB-7154, traveling northbound on Sherman Blvd. at W. Capital at 16:05:31 on June 6, 2025. Based on the vehicle's distinct features, bearing same WI auto plates, on the same day of the incident occurred, this vehicle was believed to be the suspect vehicle. Registration for the vehicle was obtained and the vehicle was registered to Dojanae T. Conn (DOB: XX/XX/1999). A check for the vehicle was conducted at the registered address but the vehicle was not located.

15. On June 6, 2025, at approximately 3:00 a.m., the victim vehicle was recovered near 4039 W. Douglas Avenue, Milwaukee, Wisconsin. At the address of 4030 W. Douglas Avenue, surveillance cameras were observed on the exterior of the building. Surveillance video was obtained and reviewed. At 01:12:56 of the timestamp, two vehicles are observed driving northbound on N. 41st Street, before turning eastbound on W. Douglas Avenue. The first vehicle has its headlights extinguished, and it a dark colored SUV. The second vehicle which is following the dark colored SUV with no lights on, was the stolen white Volkswagen. Both vehicles park on the south side of W. Douglas Avenue. The dark SUV did not appear to have a front registration plate.

16. At 01:13:59 of the timestamp, the driver and sole occupant of the white Volkswagen exits the front driver's seat of the vehicle. The driver was observed standing outside of the open front driver's side door and appeared to be gathering items or possibly searching the vehicle. The driver then walked to the front passenger door of the dark SUV and entered the

6

vehicle. The dark SUV then conducted a Y-turn in the street and drives away westbound on W. Douglas Avenue.

17. The recovered victim vehicle was processed for prints, and on June 7, 2025, the print analysis was reviewed. Lift #1, recovered from a red solo cup from the passenger side front cup holder was identified as the left middle finger of Timbra K. Morris (B/F, DOB: XX/XX/2005). Lift #3, recovered from the exterior of the driver's side front door, above the handle, identified as the left index and left middle finger, and Lift 4, recovered from the exterior of the driver's side front door, below the handle, identified as the left index finger, was identified as MAURICE O. SINGLETON (DOB: XX/XX/1988). Lift #5, recovered from the exterior of the driver's side rear window glass, identified as the left index and left ring finger, and Lift #6, recovered from the exterior of the passenger side front door, next to the handle, identified as the right index finger, was identified as MICHAEL R. EDWARDS (B/M, DOB: XX/XX/1983). Lift #7, recovered from the exterior of the driver's side rear door, identified as the left middle and left ring finger, was identified as DERRICK E. HOPKINS (B/M, DOB: XX/XX/1982).

18. On June 7, 2025, MPD officers located the suspect vehicle, a gray Chevrolet Equinox (WI ASB-7194), wanted in connection with the armed robbery/carjacking, traveling eastbound on W. Roosevelt Drive approaching N. 30th Street in Milwaukee. Officers observed the vehicle pull over on the south side of the street in front of 715 E. Locust Street and a traffic stop was attempted by officers. Officers activated their emergency lights to conduct the stop, however, the Equinox proceeded to accelerate away and enter the alleyway between N. Pierce Street and N. Fratney Street. While their lights and sirens were activated, officers observed that the suspect vehicle was blocked in by a white transport van that remained stationary for approximately one minute.

19. Officers attempted to conduct a high-risk stop on the suspect vehicle, giving orders for the occupants to exit the vehicle. Officers observed the suspect vehicle continuing to roll forward trying to force themselves through, past the transport bus, at which point, the bus began to move. When the bus made just enough room for the suspect vehicle to pass through, officers observed the front passenger exit the vehicle and surrender to officers. The individual was identified as ANGEL P. SPENCER (DOB: XX/XX/1994).

20. The suspect vehicle began to accelerate and flee northbound towards East Chambers Street and a vehicle pursuit ensued in the 2900 block of N. Fratney Street. A total distance of 5.89 miles was traveled during the pursuit. The pursuit ended after the suspect vehicle subsequently crashed into a residence in the 4500 block of West Hampton Avenue. The driver was identified as MAURICE O. SINGLETON (DOB: XX/XX/1988). A wanted check revealed the gray 2016 Chevrolet Equinox was reported stolen on May 15, 2025, by the registered owner. The wanted check also revealed that SINGLETON had an active parole status through the Wisconsin Department of Corrections. During the pursuit, SINGLETON disregarded multiple stop signs, red traffic lights, and exceeded speeds of 100 MPH on Milwaukee City Streets.

21. Following SINGLETON's arrest, MPD Detectives spoke with SPENCER. SPENCER stated that she was SINGLETON's girlfriend and had known SINGLETON for eight years. Detectives showed SPENCER still images from the armed robbery, carjacking that occurred on June 6, 2025, and SPENCER identified SUSPECT #1 as SINGLETON. SPENCER also provided detectives with video from her residence which showed SINGLETON ringing her front doorbell on June 6, 2025, at 2:05 a.m., wearing the matching clothing seen on surveillance video of the incident.

22. On June 8, 2025, a mirandized interview of SINGLETON was conducted by FBI Task Force Officer and MPD Detective Brendan Dolan. SINGLETON admitted being the person in the armed robbery surveillance video with the stripes/chevrons on the shirt. SINGLETON stated that his co-actor, "T-Paper", provided the firearm he utilized during the robbery and that he had T-Paper's phone number in his cell phone. SINGLETON provided a consent to search for his cell phone and identified his telephone number as **414-213-2321** (**Target Cell Phone 1**). SINGLETON showed Detective Dolan the phone number for "T-Paper" which was identified as **414-215-8463** (**Target Cell Phone 2**). The number was saved in SINGLETON's phone as "Kk". The telephone number **414-215-8463** was searched in law enforcement databases and came back to a KENKADE G. DUPREE (DOB: XX/XX/1994), with an address of 4236 W. Monrovia Way, which was approximately 0.3 miles (via Google Maps) from 4039 W. Douglas Avenue, where the victim vehicle was recovered. A booking photograph of DUPREE was shown to SINGLETON and SINGLETON identified DUPREE as the individual he knew as "T-Paper".

23. On June 10, 2024, DUPREE was taken into custody at his home located at 4236 W. Monrovia Way in Milwaukee. After obtaining a Wisconsin State Search warrant, a search warrant was conducted at the residence. During the execution of the search warrant, officers located a black windbreaker jacket, a pair of light gray distressed denim jeans with bleach spots, a pair of white men's size 12 Nike Air sneakers with neon yellow and black soles, hand sanitizer in red silicone holder attached to a black carabiner, a black Stoeger STR 9C 9MM semi-automatic firearm S/N: T6429-21S15522 with magazine, and (13) unfired cartridges. NCIC check of the firearm revealed that the firearm was stolen and confirmed with the Grand Chute Police Department. It was also confirmed that DUPREE was a convicted felon per Milwaukee County Case #2023CF003198.

24. Your affiant is requesting the subscriber information, call detail records, text message connection records, text message content information, specialized location records, cloud storage records for telephone number, and Timing Advance for the **Target Cell Phones,** for the timeframe of June 1, 2025, beginning at 12:00 am CST, through June 10, 2025, at 11:59 pm CST.

## IV.  CELL SITE DATA

25. In my training and experience, I have learned that the Service Providers are companies that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

26. Based on my training and experience, I know Service Providers can collect cell-site data about the **Target Cell Phones**. I also know that wireless providers such as the Service Providers typically collect and retain cell-site data pertaining to cellular phone to which they provide service in their normal course of business in order to use this information for various business-related purposes.

27. Based on my training and experience, I know that wireless providers, such as the Service Providers, typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as the Service Providers typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Cell Phones** user or users and may assist in the identification of co-conspirators and/or victims.

V. **AUTHORIZATION REQUEST**

28. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

29. I further request that the Court direct the Service Providers to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on the Service Providers, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A-2 (Verizon)

**Property to Be Searched**

Records and information associated with the cellular telephone assigned call number **414-215-8463** (referred to in attachment B as "the Account"), that is stored at the premises controlled by Verizon, a cellular service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey, 07921.

# ATTACHMENT B

## Particular Things to be Seized

**I.**     **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the following dates: June 1, 2025, 12:00 am CST, through June 10, 2025, 11:59 pm CST:

    A.    The following information about the customers or subscribers of the Accounts:

        1.    Names (including subscriber names, usernames, and screen names);

        2.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        3.    Local and long-distance telephone connection records;

        4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        5.    Length of service (including start date) and types of service utilized;

        6.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        7.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

        8.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

B. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

2. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, as well as per-call measurement data.

3. per call measurement and timing advance data (PCMD, RTT, True Call, NELOS, or similar)

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18 U.S.C. § 2119, Carjacking, and Title 18 U.S.C. § 924(c), Brandishing of a Firearm during a Crime of Violence, involving MAURICE O. SINGLETON (DOB: XX/XX/1988) and KENKADE G. DUPREE (DOB: XX/XX/1994), during the period of June 1, 2025, 12:00 am CST, through June 10, 2025, 11:59 pm CST.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider to locate the things particularly described in this Warrant.